UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KULL,<br><br>                                   Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A, INC. and DOES 1-10,<br><br>                                   Defendants. | Case No.:  18cv933 JM (JLB)<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Home Depot U.S.A., Inc. ("Home Depot") moves the court for summary judgment or, alternatively, for partial summary judgment.  (Doc. No. 18.)  Plaintiff Michael Kull opposes.  (Doc. No. 29.)  Pursuant to Local Rule 7.1(d)(1), the court took this matter under submission without oral argument.  (Doc. No. 37.)  For the reasons stated below, the court grants in part and denies in part Defendant's motion for summary judgment.

## BACKGROUND

On March 11, 2018, Plaintiff filed this action against Home Depot after obtaining a right to sue letter from California's Department of Fair Employment and Housing on May 15, 2017.  (Doc. No. 1, "Compl.")  Plaintiff alleges six causes of action: (1) wrongful termination in violation of public policy; (2) retaliation in violation of the Fair Employment and Housing Act ("FEHA"); (3) age discrimination; (4) failure to pay wages in violation of the California Labor Code as a result of misclassification; (5) harassment; and

(6) violation of California Business and Professions Code sections 17200, <u>et seq</u>. (Compl.)

Plaintiff was hired by Home Depot on June 13, 1994. (Doc. No. 18-7 at 50.)[1]  In 1998, Plaintiff was promoted to an Assistant Store Manager ("ASM") position. (Doc. No. 18-3 at 22.)  Plaintiff worked as an ASM at six different Home Depot store locations. (<u>Id</u>.)  Most recently, Plaintiff worked as an ASM at the Fairmont store from May 2010 until his termination on December 20, 2016. (<u>Id</u>.)

Beginning in November 2015, Plaintiff's store manager, Alex Taylor, documented Plaintiff for various performance and safety-related shortcomings. Taylor issued Plaintiff three progressive disciplinary notices. (Doc. No. 30-12 at 2 (November 12, 2015 progressive disciplinary notice for improperly processing hazardous waste by leaving bucket with waste out); Doc. No. 30-13 at 2 (May 20, 2016 progressive disciplinary notice for failure to make seasonal changes discussed with store manager or properly set up a holiday store event); Doc. No. 30-14 at 2 (July 5, 2016 progressive disciplinary notice for taking a two-week vacation during store event without providing supervisors with proper notice, failing to adequately delegate tasks to other supervisors and associates during absence, and approving two employee vacations without informing managers).)  Taylor also entered three managerial notes relating to Plaintiff's performance without notice to Plaintiff. (Doc. No. 18-7 at 1 (March 2, 2016 manager's note for failing to close gate, "not having an open line of communication and delegation with his garden supervisors, [and] failure to complete the garden endcaps in an accpetable [sic] amount of time"); Doc. No. 18-7 at 3 (March 4, 2016 manager's note for failure to address issues "with instock, weekend preperation [sic], cleanliness and safety" after Taylor spoke with Plaintiff about these issues); Doc. No. 18-7 at 11 (September 6, 2016 manager's note for approving associate's availability request after store manager and department supervisor denied the associate's request).)

---

[1] All citations to page numbers in this order refer to those assigned by the court's CM/ECF system.

Plaintiff argues that Taylor's documentation of his performance issues was motivated by age bias. First, Plaintiff challenges the factual basis for each progressive disciplinary notice. Second, Plaintiff argues that Home Depot policies were inconsistently and selectively enforced. Lastly, Plaintiff presents evidence that Taylor repeatedly made comments about terminating "old" employees, specifically singled Plaintiff out for termination, and stated that he could replace Plaintiff with someone who happened to be younger. (Doc. No. 29-1, Kull Decl. ¶ 8; Doc. No. 29-2, Acosta Decl. ¶ 10; Doc. No. 29-3, Martin Decl. ¶¶ 18-19.)

After Taylor left in October 2016, Tyler Budde became Plaintiff's store manager. Budde entered two manager's notes relating to Plaintiff's performance without his notice. (Doc. No. 18-7 at 13 (November 22, 2016 manager's note for failure to fix safety issues previously identified by store manager); Doc. No. 18-7 at 15 (November 23, 2016 manager's note for failure to address same safety issues).) On December 1, 2016, Budde issued Plaintiff a "Final Warning" for failing to correct the safety issues identified in the manager's notes. (Doc. No. 18-7 at 15.) Budde did not issue Plaintiff any progressive disciplinary notices other than this final warning. Plaintiff argues that Budde, like Taylor, documented his performance issues because of age bias and made comments about getting rid of "old" employees. (Doc. No. 29-2, Acosta Decl. ¶ 10.)

On December 4, 2016, Plaintiff admits that he failed to arm the store's perimeter alarm within one hour of the store closing. (Doc. No. 18-5 at 18; Doc. No. 30-16 at 2.) On December 7, 2016, Budde reported Plaintiff's failure to arm the perimeter alarm as a rule violation to Home Depot's Associate Advice and Counsel Group ("AACG"), the human resources group responsible for reviewing associate and workplace issues. (Doc. No.18-8, Budde Decl. ¶ 15.) Ralph Lee, an AACG Manager, interviewed both Budde and Plaintiff on the same day Budde reported the violation. (Doc. No. 18-7 at 50.) During Plaintiff's interview, he admitted that he failed to arm the perimeter alarm within one hour of closing. (Id.) On the same day, Plaintiff sent an email to Lee stating that the store was very busy and significantly understaffed on the evening of December 4, 2016. (Doc. No. 30-17 at 2.)

Plaintiff also stated that he felt as if he was being "singled out," harassed, and that store policy was enforced selectively and inconsistently. (Id.) Nothing in the record indicates that AACG responded to or investigated Plaintiff's claim.

On December 12, 2016, Lee emailed Lisa Ference, District Human Resources Manager for the Fairmont store's district, recommending that Plaintiff's termination would be supported as Plaintiff was on final warning status and had admitted to a minor rule violation. (Doc. No. 30-18 at 2.) On December 20, 2016, Plaintiff was terminated. (Doc. No. 18-7 at 55.) Now, Home Depot moves for summary judgment on each of Plaintiff's claims.[2]

## LEGAL STANDARDS

A motion for summary judgment shall be granted where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the file that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). But Federal Rule of Civil Procedure 56 contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Id. (emphasis in original).

In response to a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials of a pleading, but must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 324

---

[2] The parties filed numerous objections to the opposing party's evidence. The court considers only those objections necessary for its analysis below. The court does not consider the evidentiary objections Plaintiff filed ten days after the deadline to file his opposition. In its order granting Plaintiff's third request for an extension of time to file his opposition, the court cautioned Plaintiff that failure to comply with this deadline may result in the court declining to consider his opposition to Home Depot's motion for summary judgment. (Doc. No. 26 at 2.)

(internal citations omitted).  In other words, the nonmoving party may not rely solely on conclusory allegations unsupported by factual data.  <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989).  The court must examine the evidence in the light most favorable to the nonmoving party, <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962), and any doubt as to the existence of an issue of material fact requires denial of the motion, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

## DISCUSSION

### I.    Age Discrimination

FEHA prohibits an employer from terminating an employee based on age.  Cal. Gov't Code § 12940(a).  To determine whether there are triable issues of fact on FEHA claims, California courts apply the three-stage burden-shifting framework set forth by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Trop v. Sony Pictures Entm't</u>, 129 Cal. App. 4th 1133, 1144 (2005) (citing <u>Guz v. Bechtel Nat. Inc.</u>, 24 Cal. 4th 317, 354 (2000)).[3]

At trial, the plaintiff must establish a prima facie case of age discrimination by providing evidence that "(1) he was a member of a protected class, (2) he . . . was performing competently in the position he held, (3) he suffered an adverse employment action . . . and (4) some other circumstance suggests discriminatory motive." <u>Guz</u>, 24 Cal. 4th at 355.  If the employee successfully establishes a prima facie case, a presumption of discrimination arises, and the burden shifts to the employer to provide evidence that there was a "legitimate, nondiscriminatory reason" for the adverse employment action. <u>Id</u>.  "If the employer produces evidence showing a legitimate reason for the adverse employment action, the presumption falls away and the burden shifts back to the employee to provide 'substantial responsive evidence' that the employer's proffered reasons were untrue or pretextual." <u>Sako v. Wells Fargo Bank, N.A.</u>, 2015 WL 5022307, at *8 (S.D. Cal.

---

[3] Plaintiff does not argue that there is any direct evidence of discrimination.  <u>See</u> <u>DeJung v. Superior Court</u>, 169 Cal. App. 4th 533, 549-50 (2008).

5

Aug. 21, 2015) (quoting <u>Loggins v. Kaiser Permanente Int'l</u>, 151 Cal. App. 4th 1102, 1109 (2007)).

The <u>McDonnell Douglas</u> framework is modified when the employer moves for summary judgment. "[T]he employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors." <u>Serri v. Santa Clara Univ.</u>, 226 Cal. App. 4th 830, 861 (2014) (internal quotation omitted). <u>Accord</u> <u>Dep't of Fair Employment & Hous. v. Lucent Techs., Inc.</u>, 642 F.3d 728, 745 (9th Cir. 2011). If the employer meets this burden, "it is incumbent upon the employee to produce 'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." <u>Serri</u>, 226 Cal. App. 4th at 862.

### A. Prima Facie Case

"[T]he prima facie case requires 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" <u>O'Connor v. Consol. Coin Caterers Corp.</u>, 517 U.S. 308, 312-13 (1996) (citing <u>Teamsters v. United States</u>, 431 U.S. 324, 358 (1977) (emphasis and brackets omitted)). Typically, in an age discrimination case "the plaintiff must show that he was: (1) a member of a protected class [age 40–70]; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications." <u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 917 (9th Cir. 1996); <u>see also Guz v. Bechtel Nat. Inc.</u>, 24 Cal. 4th 317, 355 (2000) (characterizing the fourth element as "some other circumstances suggest discriminatory motive"). The requisite degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of evidence." <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220 (9th Cir. 1998). But the plaintiff "must at least show actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on prohibited discriminatory criterion." <u>Guz</u>, 24 Cal. 4th at 355

(internal quotations and brackets omitted).

The parties do not dispute that the first and third elements of Plaintiff's prima facie case are met by Plaintiff's age and termination.[4]  Home Depot argues that the second element is not met because in the last year of his employment, Plaintiff's performance issues were repeatedly documented.  Plaintiff argues that he consistently received positive performance reviews before he was targeted by store managers Alex Taylor and Tyler Budde.  (Doc. Nos. 30-1, 30-2, 30-3, 30-4, 30-5, 30-6, 30-7, 30-8, 30-9, 30-10) (Plaintiff's performance reviews for the years 2003 - 2005 and 2008 - 2015 without any negative ratings.)  Plaintiff declares, and Home Depot does not dispute, that prior to Taylor and Budde's feedback, in his twenty-two-year career with Home Depot, Plaintiff received only one write up.  (Doc. No. 29-1, Kull Decl. ¶ 13.)  In Plaintiff's last year of employment, Taylor and Budde input the only other negative feedback in Plaintiff's file.  (See Doc. Nos. 30-12, 30-13, 30-14, 30-15, 30-16) (progressive disciplinary notices and manager's notes filed by Taylor and Budde.)

As is discussed further below, Plaintiff presents evidence suggesting that Taylor and Budde singled Plaintiff out because of his age.  Plaintiff presents evidence that Taylor repeatedly made comments about terminating "old" employees, specifically singled Plaintiff out for termination, and stated that he could replace Plaintiff with someone who happened to be younger.  (Doc. No. 29-1, Kull Decl. ¶ 8; Doc. No. 29-2, Acosta Decl. ¶ 10; Doc. No. 29-3, Martin Decl. ¶¶ 18-19.)  Plaintiff presents evidence that Budde made similar comments about getting rid of "old" employees and was particularly diligent in documenting Plaintiff's performance issues because of Taylor's documentation of his

---

[4] The parties do not dispute that Plaintiff's age qualifies him as a member of a protected class, but the parties fail to specify Plaintiff's age anywhere in their summary judgment papers.  This significant oversight is one of several issues inadequately addressed by the parties' briefing.  Because the parties do not dispute Plaintiff's age qualifies him as a member of a protected class, the complaint indicates that Plaintiff was 47 years old when he was terminated (Compl. ¶ 9), and Home Depot does not move for summary judgment on this element, the court does not grant summary judgment against Plaintiff on this basis.

7

performance. (Doc. No. 29-2, Acosta Decl. ¶ 10.) Plaintiff meets his minimal evidentiary burden to establish this element.

Home Depot argues that the fourth element is not met because Plaintiff fails to present evidence that a substantially younger employee with qualifications equal or inferior to Plaintiff replaced him. Plaintiff argues that a younger employee replaced him, but in support provides only a declaration from a former non-managerial Home Depot employee stating that Plaintiff was replaced by an employee in her twenties who had only been with Home Depot for a few years. (Doc. No. 29-2, Acosta Decl. ¶ 13.) Nothing in this declaration suggests that these statements were made with personal knowledge of the facts. See Fed. R. Evid. 602. Accordingly, the court does not rely on these statements. But at summary judgment, Home Depot "has the initial burden to present admissible evidence showing . . . that one or more elements of plaintiff's prima facie case is lacking." Serri, 226 Cal. App. 4th at 861. Home Depot does not dispute that Plaintiff was replaced by a substantially younger employee and does not present any evidence suggesting that the qualifications of Plaintiff's replacement were superior to Plaintiff's qualifications. As the employer of Plaintiff's replacement, Home Depot is uniquely in possession of documentation reflecting the employee's age and qualifications, but failed to include that evidence in its motion for summary judgment. Accordingly, the court finds Plaintiff's prima facie case sufficient for summary judgment purposes.[5]

## B. Legitimate, Nondiscriminatory Reason

Home Depot asserts that it terminated Plaintiff's employment for a legitimate, nondiscriminatory reason because Plaintiff had a history of poor performance and admitted

---

[5] Moreover, as is discussed below, "other circumstances suggest discriminatory motive." Guz, 24 Cal. 4th at 355. See also Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 358 (1977) ("The importance of McDonnell Douglas lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.").

to failing to set the store perimeter alarm within one hour of closing, in violation of store policy. Home Depot has a Code of Conduct and Standards of Performance of Salaried Associates that govern ASM's conduct. (Doc. No. 18-10, Ference Decl. ¶ 9.) These standards distinguish between "major" and "minor" rule violations. (Id.) Major violations are "those behaviors that are so serious in nature that they typically warrant immediate termination upon the first offense; however a final warning may be appropriate depending on the circumstances and behavior at issue." (Doc. No. 18-10 at 43.) Minor violations "are those behaviors that although not permitted, are generally addressed through the progressive disciplinary process." (Id.) The progressive disciplinary process has four steps: (1) coaching, (2) counseling, (3) final warning, and (4) termination. (Id.)

Home Depot's Standard Operating Procedures require the store's perimeter alarm be set within one hour of closing, unless an exception applies. (Doc. No. 18-10, Ference Decl. ¶ 27.)[6] In this case, failure to set the alarm within one hour of closing was considered a minor rule violation. (Doc. No. 18-12 at 8, 11; Doc. No. 31-7 at 214.) Plaintiff admits that on December 4, 2016, he armed the perimeter alarm approximately three hours after closing. (Doc. No. 18-5 at 18.) By that date, Taylor had coached and counseled Plaintiff on his performance and Budde had issued Plaintiff a final warning. Accordingly, as the last step in the progressive disciplinary process, Budde terminated Plaintiff. (Doc. No. 18-12 at 13.) Home Depot meets its burden to provide evidence it had a legitimate, nondiscriminatory reason for terminating Plaintiff.

### C. Pretext

The burden thus shifts to Plaintiff to demonstrate that discrimination was a substantial motivating factor in his termination. Harris v. City of Santa Monica, 56 Cal.

---

[6] The Standard Operating Procedures state: "Required alarm points must be armed within 60 minutes of store closing. Exceptions: points can be by-passed or disarmed to perform critical operational tasks such as, receiving, for customers to exit the building, or for associates to exit or enter the building. Associate entrance must be alarmed if the door is locked but unattended. If attended, the alarm may be bypassed." (Doc. No. 18-11 at 44.)

9

4th 203, 232 (2013). "Requiring the plaintiff to show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision. At the same time . . . proof that discrimination was a *substantial* factor in an employment decision triggers the deterrent purpose of the FEHA and thus exposes the employer to liability, even if other factors would have led the employer to make the same decision at the time." Id. at 232 (emphasis in original). "If a plaintiff uses circumstantial evidence to satisfy this burden, such evidence must be specific and substantial." Dep't of Fair Employment & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 746 (9th Cir. 2011) (quotations and citation omitted). However, Plaintiff "must only show that a rational trier of fact could, on all the evidence, find that [Home Depot's] explanation was pretextual and that therefore its action was taken for impermissibly discriminatory reasons." Pottenger v. Potlatch Corp., 329 F.3d 740, 746 (9th Cir. 2003).

Plaintiff argues that Home Depot's reasons are pretextual and were motivated by animus because Store Managers Taylor and Budde "targeted" Plaintiff because of his age and documented performance deficiencies to "performance him out." (Doc. No. 26 at 17.) The court finds the question of whether discriminatory animus was a substantial motivating factor in Plaintiff's termination presents genuine issues of material fact.

First, a jury could reasonably conclude that Taylor harbored discriminatory animus against Plaintiff. Home Depot does not dispute that Taylor made comments about wanting to get rid of "old" employees and specifically singled Plaintiff out, stating that Plaintiff could be replaced by a younger person who makes less money. Former Home Depot employee Amapola Martin, who shared an office with Taylor, declares that Taylor repeatedly told her that Plaintiff made too much money and that he needed to get someone

else. (Doc. No. 29-3, Martin Decl. ¶ 18.)[7] Martin declares that Taylor "said he could replace Mike Kull with other people who could do a better job, who happened to be younger, less experienced and making much less money that [sic] Mike Kull." (Id.) According to Martin, Taylor also made comments about getting rid of the "old" employees "because the old people did not do their jobs and they made too much money and were too set in their ways." (Id. ¶ 19.) Martin declares that Taylor made comments such as "let's performance him out." (Id.) On more than one occasion, Martin declares, Taylor instructed Martin "to try to convince older and tenured associates to step down or quit." (Id. ¶ 23.) Taylor also had a personal motivation to terminate longer-term employees such as Plaintiff, Martin declares, because his bonus was directly tied to payroll expenses—the higher salaries of long-term employees at the Fairmont store reduced Taylor's bonus. (Id. ¶¶ 25-26.) Furthermore, another former Home Depot employee, Ramon Acosta, and Plaintiff both declare that Taylor made comments about getting rid of the "old" employees. (Doc. No. 29-1, Kull Decl. ¶ 8; Doc. No. 29-2, Acosta Decl. ¶ 10.) During his deposition, Plaintiff testified that on three or four occasions Taylor asked Plaintiff whether he was thinking about retiring. (Doc. No. 31-3 at 20.) Specifically, Taylor first asked Plaintiff if he was planning on retiring a few months after Taylor became store manager. (Id. at 21.) Plaintiff found this question fair, as Taylor and Plaintiff were still getting to know each other, but felt that the question was odd when Taylor asked an additional two or three times. (Id.)

---

[7] Home Depot objects to Martin's declaration on the basis that her "incompetent declaration does not establish that she was involved in any decision to discipline and/or terminate Kull and thus she cannot offer any competent evidence on the motivation of the decision makers because she has no personal knowledge." (Doc. No. 36 at 3.) Home Depot's objection is overruled. Plaintiff does not argue that Martin was involved in his termination. Rather, Martin declares that she heard Taylor make certain comments about older employees and Plaintiff. Such evidence is relevant on the question of motivation for Plaintiff's termination.

Home Depot argues that Taylor's comments are mere stray remarks and should not be considered as he was not involved in Plaintiff's termination. Unlike the statements made by supervisors in the cases Home Depot cites, several of Taylor's comments were directly related to Plaintiff's termination. See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996) (without other evidence of animus, a supervisor's comment about "old timers" was insufficient to raise a genuine issue of material fact as to pretext when the comment was ambiguous and not tied directly to the plaintiff's layoff); Nesbit v. Pepsico, Inc., 994 F.2d 703, 705 (9th Cir. 1993) (comments by supervisors that "[w]e don't necessarily like grey hair" and "[w]e don't want unpromotable fifty-year olds around" did not raise inference of age discrimination when the remarks were not tied directly to plaintiffs' terminations). Moreover, the California Supreme Court has called into question the "stray remarks" doctrine Home Depot relies upon. See Reid v. Google, Inc., 50 Cal. 4th 512, 542 (2010) ("[T]he stray remarks doctrine contains a major flaw because discriminatory remarks by a non-decisionmaking employee *can* influence a decision maker.") (emphasis in original). "[E]ven if age-related comments can be considered stray remarks because they were not made in the direct context of the decisional process, a court should not categorically discount the evidence if relevant; it should be left to the fact finder to assess its probative value." Id. at 540 (citing Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 153 (2000)). The court must "base its summary judgment determination on the totality of evidence in the record, including any relevant discriminatory remarks," and draw all inferences in Plaintiff's favor. Reed, 50 Cal. 4th at 542.

Here, to the extent Taylor's comments are ambiguous, "[d]etermining the weight of discriminatory or ambiguous remarks is a role reserved for the jury." Id. at 541. Viewing the evidence in the light most favorable to Plaintiff, Taylor's comments raise an inference of discriminatory animus based on plaintiff's age. See Sandell v. Taylor-Listug, Inc., 188 Cal. App. 4th 297, 325 (2010) (supervisor's statements "that he would rather fire old people and replace them with newer, younger people because it was cheaper," and that "he would rather get rid of an older, tenured employee and hire a younger employee because they

were less—less expensive," raise a reasonable inference that the supervisor was motived to terminate employees because of their age). Taylor's statement that he could find a younger replacement for Plaintiff indicates that he specifically considered replacing Plaintiff with someone younger. In addition, a jury could conclude that Taylor's comments about getting rid of "old" people refer to older people, and not just more senior employees. Likewise, drawing all inferences in Plaintiff's favor, Taylor's remark that older employees did not do their jobs and were set in their ways may suggest that Taylor used age as a proxy for employees' productivity and performance.

This inference of discriminatory animus is further supported by other circumstances. Former employees Martin and Acosta declare that Taylor "targeted" older employees for termination and did not uniformly enforce performance standards. (Doc. No. 29-2, Acosta Decl. ¶¶ 8-13; Doc. No. 29-3, Martin Decl. ¶¶ 14, 20-22.) For example, Martin declares, on one occasion when a younger employee and an older employee were both behind on a project, Taylor instructed the ASM to mark the younger employee's project complete but issue the older employee a write up. (Doc. No. 29-3, Martin Decl. ¶ 22.) In his deposition, Plaintiff testified that during a management meeting Taylor identified the two oldest supervisors employed at the time as employees he wanted to replace. (Doc. No. 31-3 at 26-27.) Plaintiff testified that Taylor "said he didn't care for them, didn't like how they were older and set in their ways within what they were doing in the store." (Id.)

Second, the parties dispute whether Taylor had a legitimate basis to enter any of the three progressive disciplinary notices he issued Plaintiff. On November 11, 2015, Taylor and co-manager Ryan Ayres insisted that that they had photos and video footage showing that Plaintiff improperly disposed of hazardous material. (Doc. No. 31-2 at 5.) Taylor issued Plaintiff a progressive disciplinary notice for the incident. (Doc. No. 30-12 at 2.) Plaintiff conducted his own investigation and determined that he was not working on the day the material was improperly processed and that the material had been processed by a different ASM. (Doc. No. 31-2 at 5-6.) After Plaintiff told Taylor and Ayres what he had discovered, the managers admitted they were wrong but said they could not remove the

disciplinary notice from Plaintiff's file. (Id. at 7-10.) Home Depot does not dispute that this first disciplinary notice was issued to Plaintiff for a different ASM's conduct. At his deposition, Plaintiff testified that after this incident he knew he was "targeted" for termination. (Id. at 7.) On May 20, 2016, Taylor issued Plaintiff a "coaching" progressive disciplinary notice for failing to properly set up an important seasonal event. (Doc. No. 30-13 at 2; Doc. No. 18-15, Taylor Decl. ¶ 13.) At his deposition, Plaintiff testified that he felt like the "scapegoat" because he completed the tasks assigned to him, but Taylor unfairly placed responsibility for the entire event on Plaintiff, which had been planned weeks in advance and required each department and associate to perform specific, delegated tasks. (Doc. No. 31-3 at 45-46.) On July 5, 2016, Taylor issued Plaintiff a "counseling" progressive disciplinary notice for taking a two-week vacation during one of the busiest events of the year without providing proper notice, failing to adequately delegate tasks to other supervisors and associates, and approving two other employees' vacations without informing managers. (Doc. No. 30-14 at 2; Doc. No. 18-15, Taylor Decl. ¶ 14.) At his deposition, Plaintiff testified that Taylor knew Plaintiff and the other two employees were going on vacation because Taylor himself approved their vacations. (Doc. No. 31-3 at 49.) Plaintiff also testified that it was the responsibility of the on-duty ASM to delegate tasks, not Plaintiff while he was on vacation. (Id.)[8]

Third, a jury could reasonably conclude that Plaintiff's second store manager, Tyler Budde, documented Plaintiff for performance issues because of his own discriminatory animus or because Taylor had singled Plaintiff out for termination. In October 2016, Taylor transferred to the Genesse store and Budde became the new Fairmont store manager. (Doc. No. 18-15, Taylor Decl. ¶ 3; Doc. No. 18-8, Budde Decl. ¶ 2.) Former employee Acosta declares that Budde, like Taylor, made comments about getting rid of the

---

[8] Taylor declares that Plaintiff failed to inform him or the district supervisor of his Summer 2016 vacation and failed to identify a "stand in." (Doc. No. 18-15, Taylor Decl. ¶ 14.) But at summary judgment, the court views the facts in the light most favorable to Plaintiff.

"old" employees. (Doc. No. 29-2, Acosta Decl. ¶ 10.) Soon after becoming store manager, on December 1, 2016, Budde issued Plaintiff a final warning without first coaching or counseling Plaintiff. (Doc. No. 18-7 at 17.) Budde issued Plaintiff the final warning for failing to remedy safety issues, such as shrink wrap not secured to products on pallets, that he had discussed with Plaintiff on November 22, 2016. (Id.) The following day, November 23, 2016, Budde found that Plaintiff had not fixed the safety issues. (Id.) Budde issued the final warning approximately a week later. (Id.)[9] On December 4, 2016, Plaintiff failed to set the alarm within one hour of the store closing. (Doc. No. 18-5 at 18; Doc. No. 30-16 at 2.)[10] Budde reported this failure to AACG on December 7, 2016. (Doc. No.18-8, Budde Decl. ¶ 15.) After reporting the final alarm violation to AACG, Budde stated that he did not provide Plaintiff with any additional counseling because Taylor had already counseled Plaintiff. (Doc. No. 18-7 at 50.) Budde also stated that he had been "diligent" in documenting Plaintiff's performance issues after Taylor's counseling. (Id.)

At his deposition, Plaintiff testified that Home Depot's Standard Operating Procedures were not uniformly enforced. (Doc. No. 31-3 at 62-63.) For example, Plaintiff testified that, during his employment, Taylor asked Plaintiff to break safety policies that put Plaintiff and other employees in danger. (Id. at 62-63, 73-78.) Plaintiff further testified that numerous safety violations existed throughout the store during his employment. (Id.)

---

[9] Plaintiff concedes that he did not fix the issues by the next day, November 23, 2016. (Doc. No. 31-3 at 52-55.) But Plaintiff testified that he did not immediately fix the issues because the store was preparing for Black Friday and merchandise was blocking the aisles. (Id.) The safety issues were fixed, Plaintiff testified, after the Black Friday merchandise was removed. (Id. at 55.)

[10] Plaintiff argues that he was not required to set the alarm because a policy exception to setting the alarm applied as Plaintiff was performing a "critical operational task" at the time. (Doc. No. 29 at 11-13.) Home Depot fails to dispute this argument. On the current record, however, the court cannot determine whether the "critical operational task" exception applies to the tasks performed after store closing on December 4, 2016.

Plaintiff testified that he felt he was being singled out and "targeted" for failing to abide by certain policies when others were not. (Id.)[11]

Lastly, viewing the evidence in the light most favorable to Plaintiff, the investigation and decision-making process preceding Plaintiff's termination would not have ferreted out any animus held by Taylor or Budde. On the day Budde reported Plaintiff's failure to timely set the alarm to AACG, Plaintiff emailed AACG manager Ralph Lee. Plaintiff's email stated that he "would like to understand why I am being singled out," as "[i]n 18 years of being an ASM, I have not experienced this scrutiny." (Doc. No. 30-17 at 2.) Plaintiff stated that he felt "like I am being harassed and singled out" and wanted to know why it felt "like there is a target on my back?" (Id.) Plaintiff wrote that "[t]his feeling started last year when I was given a coaching documentation for a hazmat issue, 11/11/15," that Taylor later admitted Plaintiff had not perpetrated but did not remove from Plaintiff's file. (Id.) Plaintiff told Lee that enforcement of Home Depot's Standard Operating Procedures was "selective and inconsistent" and pointed to other safety violations existing throughout the store on a daily basis. (Id.) On the record before the court, no one at Home Depot, including Lee, ever replied to Plaintiff or investigated any of the issues raised in Plaintiff's email.

On December 12, 2016, AACG found that it would be appropriate to terminate Plaintiff as he violated a minor work rule when he was on final warning status. (Doc. No. 30-18 at 2.) AACG explained its rationale as follows: "1.) The reported [Plaintiff] admitted to not arming the building until late due to staffing inadequacies. 2.) The reported has been spoken to regarding safety matter [sic] in the past with slow response. 3.) The reported is currently on an active progressive final for safety. 4.) The district has provided two comparators for like actions that received more severe documentation. (note that the

---

[11] In addition, former employee Acosta declares that Home Depot policies were not uniformly enforced and that Budde "continued to target older tenured employees, including . . . Mike Kull." (Doc. No. 29-2, Acosta Decl. ¶¶ 8-9.)

16

comparators given did not arm the building at all making those violations a major work rule violation where Mike armed the building late - making this violation a minor violation.)." (Id.)

Home Depot managers decided to terminate Plaintiff based on this recommendation, a review of Plaintiff's file, and a conversation with Budde. After receiving AACG's recommendation, Lisa Ference, the district human resources manager, and Budde agreed that Plaintiff should be terminated for failing to follow Home Depot's Standard Operating Procedures. (Doc. No. 18-10, Ference Decl. ¶ 31.) Ference recommended to Mike Astorino, the district manager, that Plaintiff be terminated. (Id. ¶ 32.) Astorino approved Plaintiff's termination. (Doc. No. 31-7 at 214.) Astorino testified at his deposition that "my mind set [sic] at the time was the guy was on final, so it didn't matter if it was major, minor, it's termination." (Id.) On December 20, 2016, Budde told Plaintiff that he was terminated because he had been on final warning and subsequently violated a minor rule. (Doc. No. 18-8, Budde Decl. ¶ 19.)

Home Depot's investigation was limited to reviewing Plaintiff's disciplinary record, which was created by Taylor and Budde; interviewing Plaintiff and Budde; and confirming that Plaintiff failed to set the alarm within one hour of the store closing. Nothing in the record suggests that AACG or any other Home Depot employee investigated or asked Plaintiff about his claim that he was being singled out and harassed. The court does not suggest that Home Depot's failure to more thoroughly investigate Plaintiff's termination in itself suggests animus. But this investigation, viewed in the light most favorable to Plaintiff, would not have displaced or uncovered any potential animus held by Taylor or Budde.[12] To the extent Taylor or Budde were motivated by discriminatory animus to create

_____

[12] In its reply brief, Home Depot relies on two cases—Cotran v. Rollins Hudig Hall Int'l, Inc., 17 Cal. 4th 93 (1998) and Silva v. Lucky Stores, Inc., 65 Cal. App. 4th 256 (1998)—which hold that an employer need only demonstrate that it conducted an investigation fairly, honestly, and in good faith prior to terminating the employee to avoid liability for breach of an implied contract not to terminate employment except for good cause. Home

a disciplinary record for the purpose of terminating Plaintiff, a jury could reasonably conclude that this animus was a substantial motivating factor in Plaintiff's termination. See Harris, 56 Cal. 4th at 232.[13] Viewing the evidence as a whole, and drawing all inferences in Plaintiff's favor, genuine issues of material fact exist as to whether discriminatory animus was a substantial motivating factor in Plaintiff's termination. Accordingly, Home Depot's motion for summary judgment on Plaintiff's age discrimination claim is denied.

## II. Retaliation

"FEHA makes it unlawful for an employer 'to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part.'" Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1243 (9th Cir. 2013) (quoting Cal. Gov't Code § 12940(h)). California courts apply the McDonnell Douglas burden-shifting framework to retaliation claims. Id. "[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005).

Home Depot challenges only the first and third elements of Plaintiff's prima facie case as it does not dispute that Plaintiff's termination constituted an adverse employment action. On the first element, Plaintiff argues that he engaged in two protected activities.

---

Depot fails to explain why these cases are applicable to Plaintiff's age discrimination claim. Here, the question is whether Taylor and/or Budde's discriminatory animus was a substantial motivating factor in Plaintiff's termination, not whether Home Depot's investigation was fair, honest, and made in good faith. See Harris, 56 Cal. 4th at 232.

[13] Home Depot argues that Plaintiff was not treated differently than other employees because Budde, at age 33, was also fired for failing to follow alarm protocol. Budde was fired after he directed the alarm company to bypass the alarm, which resulted in the store being breached twice and in robbery. (Doc. No. 18-12 at 15.) This "major security violation," (id.), is categorically different from Plaintiff's minor rule violation for failing to timely set the alarm.

First, Plaintiff argues that he engaged in a protected activity when he sent an email to AACG complaining about safety violations on the same day Budde reported his failure to timely set the alarm.  Plaintiff's email references the following safety violations—

> [S]hrink wrap violations are just one of the many SOP violations existing in the store today.  SOP also states pallets cannot exceed 4 feet high in overheads.  However, that rule is not enforced, as there are dozens of pallets over 4 ft through out [sic] the store.  I have also been told to remove entire sections of Cantilever uprights, by store managers Alex and Ryan, again against SOP, but I was made to feel that I must do it.  It appears the enforcement of SOP is selective and inconsistent.

(Doc. No. 30-17 at 2.)  Second, Plaintiff argues he engaged in protected activity when he complained to other ASM's about not having rest and meal breaks.  In his deposition, Plaintiff testified that he never filed a formal complaint regarding meal and rest breaks and informally complained to other ASM's about not getting breaks.  (Doc. No. 18-5 at 14-15) ("[W]e would just speak among the other ASMs, 'Yeah, it sucks we don't get to take our lunch breaks.'  And we just go, 'Well, that's what happens,' and we just continue on, because there was no changing it.").)  To constitute protected activity, an employee must have opposed an employment practice made unlawful <u>under FEHA</u>.  <u>Dinslage v. City & Cty. of San Francisco</u>, 5 Cal. App. 5th 368, 381 (2016).  Plaintiff does not explain how Home Depot's alleged failure to comply with its own policy or failure to provide rest breaks violates FEHA, nor does he assert any belief that these practices violate FEHA.

Even if these complaints were protected activities, Plaintiff cannot establish a causal connection between his complaints and termination.  Plaintiff's deposition testimony belies his argument that there is a causal connection between the two.  In his deposition, Plaintiff testified that he did not believe he was terminated because of the safety complaint he sent to AACG.  (Doc. No. 18-5 at 12.)[14]  Plaintiff further testified that he did not think he was

---

[14] Plaintiff testified as follows:
> Q: Do you believe that you were treated unfairly in any way for sending that letter to the AACG?
> A: Well, I was terminated after it. That was the response, so ....
> Q: Do you believe that you were terminated for sending that letter to the AACG?

treated unfairly in any way for complaining with other ASM's about not receiving breaks. (Id. at 16.)   Accordingly, Home Depot's motion for summary judgment on Plaintiff's retaliation claim is granted.

### III.   Harassment

Home Depot moves for summary judgment on Plaintiff's harassment claim.   FEHA prohibits harassment of an employee.   Cal. Gov't Code § 12940(j)(1).   "To establish a claim for harassment, a plaintiff must demonstrate that: (1) [ ]he is a member of a protected group; (2) [ ]he was subjected to harassment because [ ]he belonged to this group; and (3) the alleged harassment was so severe that it created a hostile work environment." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1244 (9th Cir. 2013).   "[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was *severe enough or sufficiently pervasive* to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees *because of their sex* [or age]."   Lyle v. Warner Bros. Television Prods., 38 Cal. 4th 264, 278–79 (2006) (emphasis in original).

"Unlike discrimination claims, harassment 'consists of actions outside the scope of job duties which are not of a type necessary to business and personnel management.'" Lawler, 704 F.3d at 1244 (quoting Reno v. Baird, 18 Cal. 4th 640 (1998)).   "For example, 'commonly necessary personnel management actions such as hiring and firing, job or project assignments, . . . promotion or demotion, [and] performance evaluations, . . . do not come within the meaning of harassment."   Lawler, 704 F.3d at 1244 (quoting Reno, 18 Cal. 4th at 646-47.)   However, "[a]lthough discrimination and harassment are separate wrongs, they are sometimes closely interrelated, and even overlapping, particularly with

---

A: Not for sending that letter, no. I just think it was just ignored.
Q: So you don't believe you were terminated for sending that letter to the AACG; correct?
A: Correct.
(Doc. No. 18-5 at 12.)

regard to proof." <u>Roby v. McKesson Corp.</u>, 47 Cal. 4th 686, 707 (2009). Thus, "some official employment actions done in furtherance of a supervisor's managerial role can also have a secondary effect of communicating a hostile message. This occurs when the actions establish a widespread pattern of bias." <u>Id.</u> at 709 (citation omitted) ("[S]ome actions that Schoener took with respect to Roby are best characterized as official employment actions rather than hostile social interactions in the workplace, but they may have contributed to the hostile message that Schoener was expressing to Roby in other, more explicit ways."). This secondary effect can also occur when the actions are taken in an "unnecessarily demeaning manner." <u>Id.</u> at 709 n.10. Additionally, if the jury determines that the supervisory employment actions were motivated by discrimination, those actions can be used to establish "discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." <u>Id.</u> at 709. As such, "discrimination and harassment claims can overlap as an evidentiary matter." <u>Id.</u>

Here, Home Depot argues that Plaintiff cannot meet the third element of his harassment claim, hostile work environment. Plaintiff argues that the same conduct underlying his retaliation claim (reporting safety and work break violations) led to harassment. (Doc. No. 29 at 20.) As discussed above, Plaintiff testified that he did not believe he was terminated or treated unfairly because of his safety and rest break complaints. Accordingly, Plaintiff fails to establish a harassment claim based on this basis. Plaintiff also argues that he was harassed because of his age. As discussed above, genuine issues of material fact exist as to whether Plaintiff's supervisors took disciplinary action against Plaintiff because of discriminatory animus. Plaintiff testified that since November 2015, when he was issued a disciplinary notice for the actions of a different ASM, Plaintiff was targeted for firing by Taylor. As a result, Plaintiff testified, Taylor documented Plaintiff for performance failures that he would not have documented other employees for or that were not Plaintiff's responsibility. In his email to AACG, Plaintiff wrote: "I feel like I am being harassed and singled out. I feel like every day I come to work lately I am

put under a microscope and it makes me feel like it's a hostile environment every time I set foot in the store." (Doc. No. 30-17 at 2.) Thus, the gravamen of Plaintiff's subjective harassment claim appears to be that standard disciplinary tools were utilized by Taylor and Budde to highlight performance failures which Plaintiff denies he committed or which were pretextual in nature. Plaintiff's hostile work environment theory seems to practically touch the line which, as noted above, allows for commonly used personnel and management tools necessary for adverse employment action to be taken. That Plaintiff was necessarily aware of the coaching, counseling, and warnings as they were focused upon him does not turn what is essentially an age discrimination claim into a hostile work environment claim. However, given sufficient evidence of selective enforcement of Home Depot's policies and comments or questions related to Plaintiff's age or anticipated retirement, as outlined above, Plaintiff's hostile work environment claim, in a close call, survives summary judgment. Viewing the evidence in the light most favorable to Plaintiff, a jury could reasonably conclude that Taylor and Budde's actions conveyed a demeaning message to Plaintiff about his age. Thus, genuine issues of material fact exist as to whether the actions of Plaintiff's supervisors constituted harassment.

In sum, the court denies summary judgment as to Plaintiff's harassment claim on the basis of age, but grants summary judgment in Home Depot's favor and against Plaintiff on his harassment claim on any other basis.

## IV. Misclassification Wage Claims

California law generally entitles employees to overtime pay for "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek," Cal. Lab. Code § 510(a), unless the employee qualifies for a statutory exemption from the state's overtime laws, § 515. "[E]xemptions from statutory mandatory overtime provisions are narrowly construed." Ramirez v. Yosemite Water Co., 20 Cal. 4th 785, 794 (1999). Assertion of an exemption from overtime laws is an affirmative defense, and thus, the employer bears the burden of proving the exemption applies. Id. at 794-95.

Home Depot argues that Plaintiff qualifies for the executive exemption to overtime

laws.  California Code of Regulations, title 8, § 11070(1)(A)(1) defines the executive exemption for employees in the mercantile industry.[15]  This provision requires, among other elements, that an employee be "primarily engaged" in exempt duties.  Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(e).  "Under California law, the phrase 'primarily engaged' means 'more than one-half of the employee's worktime' is spent performing duties that qualify as exempt."  United Parcel Serv. Wage & Hour Cases, 190 Cal. App. 4th 1001, 1018 (2010) (citing Cal. Lab. Code, § 515(e); Cal. Code Regs., tit. 8, § 11090(2)(J)).  Accord Cal. Code Regs. tit. 8, § 11070(2)(K) ("'Primarily' . . . means more than one-half the employee's work time.").  "Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions."  Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(e).  "If [the employee's] actions were taken to 'supervis[e] the employees or contribute to the smooth functioning of the department,' they were 'exempt work'; if they were taken for some other reason, they were 'nonexempt work.'"  Heyen v. Safeway Inc., 216 Cal. App. 4th 795, 827 (2013) (citing 29 C.F.R. § 541.108(a)).  "[T]he regulations look to the supervisor's *reason or purpose* for undertaking the task.  If a task is performed because it is 'helpful in supervising the employees or contribute[s] to the smooth functioning of the department for which [the supervisors] are responsible' (§ 541.108(a), (c)), the work is exempt; if not, it is nonexempt."  Id. at 826 (emphasis in original).  "The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's

---

[15] "California law governing wages, hours, and working conditions is embodied, to a large extent, in Labor Code section 1171 et seq. and the regulations (wage orders) promulgated by the Industrial Welfare Commission (IWC)."  United Parcel Serv. Wage & Hour Cases, 190 Cal. App. 4th 1001, 1009 (2010).  "The IWC has promulgated numerous wage orders—one concerning the state minimum wage and the balance covering workers employed in various industries."  Id. at 1110.  IWC Wage Order No. 7–2001, codified at California Code of Regulations, title 8, section 11070, governs workers employed in the mercantile industry.

realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement." Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(e). Accord Ramirez, 20 Cal. 4th at 801-02.

Home Depot fails to meet its burden to establish this element of the exemption. First, Home Depot does not clearly explain how it calculated Plaintiff spent more than half of his time on exempt tasks. Home Depot argues that Plaintiff's deposition testimony establishes he worked approximately 43 hours of his 55- to 60-hour work week performing exempt tasks. When testifying about how often he engaged in managerial tasks, Plaintiff primarily testified in terms of percentages of his total time worked. Home Depot appears to have converted this testimony into average hours per week without showing its work and by assuming that Plaintiff worked an average of 60 hours per week. (See Doc. No. 18-1 at 11-12.) But Plaintiff testified that he worked an average of 60 to 65 hours a week. (Doc. No. 31-2 at 64.) Moreover, the court cannot determine which portions of Plaintiff's deposition transcript correspond to the various tasks categories in Home Depot's motion because of layer-upon-layer of string citations, and thus, cannot confirm Home Depot's characterization of the tasks Plaintiff performed or its estimate of how much time Plaintiff spent on these tasks. Some of the task categories enumerated in Home Depot's motion for summary judgment may double count Plaintiff's time or include nonexempt tasks.[16] Home Depot's unsubstantiated calculations are insufficient to establish that Plaintiff primarily performed nonexempt tasks.

Second, even if Home Depot's estimations were accurate and verifiable, Plaintiff testified that he spent a significant amount of time performing non-managerial functions.

---

[16] For example, Home Depot argues that Plaintiff worked 12-16 hours a week "executing the opening and/or closing procedures" and separately worked 5-6 hours per week "executing the safety checklist," (Doc. No. 18-1 at 11), but Plaintiff testified that completing a safety checklist was part of his opening duties and included that checklist in his estimate for time spent opening the store, (Doc. No. 18-3 at 43). From the record, it is not clear if the safety checklist Plaintiff refers to when discussing his store opening duties is the same safety checklist he also refers to later in his deposition. (See id. at 45-46.)

Plaintiff testified that he spent 10% of his time stocking shelves, (Doc. No. 31-2 at 43); an average of 30 minutes to 1 hour a day building displays, (id. at 60; Doc. No. 31-3 at 11); 10% of his time building resets (Doc. No. 31-2 at 60); an average of 2 hours a day throwing away trash, (Doc. No. 31-3 at 4-5);[17] at least 2 hours a day cleaning the store, (id. at 7); and 25% of his time directly providing customer service, (id. at 9-10, 13-14). Home Depot fails to address this testimony.[18] Although not entirely clear from the parties' briefing, Plaintiff may have spent more than half of his time on these tasks.

Home Depot argues that even if Plaintiff spent more than half of his working hours performing nonexempt tasks, this was because Plaintiff's substandard performance resulted in his failure to fulfill Home Depot's reasonable expectations.[19] To determine whether the employee met "the employer's realistic expectations and the realistic requirements of the job," Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(e), the court "consider[s] whether the employee's practice diverges from the employer's realistic expectations,

---

[17] Plaintiff testified that the process of throwing away trash included staging items by the compactor; having a manager present to unlock the trash; sorting the trash into markdowns and trash; processing markdowns by scanning each item and having the computer tell the employee whether the item could be thrown away or should be processed as hazardous materials; sorting through trash bags to ensure they did not contain hazardous materials; and properly disposing of all items. (Id. at 4-5.) Each parties' briefing summarily concludes that these tasks fall within the ambit of the task description that is most convenient to them without analysis. The court declines to take a position on this issue when the parties failed to adequately address it.

[18] Home Depot objects to Plaintiff's declaration statements relating to the amount of time he spent on various tasks. The court relies on Plaintiff's deposition testimony, and thus, does not address Home Depot's objections to Plaintiff's declaration on this matter.

[19] Home Depot also argues Plaintiff's job duties are not in dispute because after reviewing Home Depot's ASM job description, Plaintiff testified that "a lot of the rules might stay the same, but they would make some adjustments." (Doc. No. 36 at 10.) This statement does not clearly indicate that Plaintiff agrees with the ASM job description. Moreover, in his deposition, Plaintiff testified he was required to perform many job duties not included in the ASM job description, such as stocking shelves, building displays and resets, directly providing customer service, and cleaning the store. (Doc. No. 31-2 at 43-44, 60; Doc. No. 31-3 at 4-14.)

whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job." <u>Ramirez</u>, 20 Cal. 4th 801-02. As above, these questions present genuine issues of material fact. Home Depot supervisors declare that an ASM should spend well over half of his time engaging in managerial tasks. (Doc. No. 18-8, Budde Decl. ¶ 8; Doc. No. 18-15, Taylor Decl. ¶ 8.)[20] During his deposition, however, Plaintiff testified that the reality of the store was much different than the ASM job description. Because the store was significantly and consistently understaffed in comparison to the workload, Plaintiff was routinely required to engage in nonexempt tasks. (Doc. No. 31-2 at 43-44, 59-60, 65.) Accordingly, a jury could reasonably conclude that Plaintiff's practice did not significantly differ from Home Depot's *reasonable* expectations. <u>See Heyen</u>, 216 Cal. App. 4th at 828-29 (upholding finding that employee's practice of doing significant amounts of nonexempt work did not differ from the store's realistic expectations in light of evidence of store's unrealistic expectations and failure to sufficiently staff nonexempt employees). In addition, although Plaintiff received disciplinary notices about his job performance, none of these notices related to a failure to properly allocate his time between managerial and non-managerial tasks. Furthermore, as discussed above, Plaintiff argues that these disciplinary notices were motivated by discriminatory animus.

In sum, the court denies Home Depot's motion for summary judgment on Plaintiff's misclassification claim as it fails to meet its burden to establish an exemption applies.

## V. Wrongful Termination

Home Depot moves for summary judgment on Plaintiff's wrongful termination claim. Plaintiff argues that six separate "exceptions" to the at-will presumption apply,

---

[20] The court finds it unnecessary to resolve Plaintiff's objections to these declarations as genuine issues of material fact exist on the question of whether Plaintiff was primarily engaged in exempt duties.

including breach of an implied contract and breach of an implied contract of good faith and fair dealing. In his complaint, however, Plaintiff only asserts a claim for wrongful termination in violation of public policy. (Compl. ¶¶ 46-54.)[21] "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). The court only considers Plaintiff's claim for wrongful termination in violation of public policy as it is the only wrongful termination claim asserted in his complaint. See id.

Plaintiff alleges that he was "wrongfully terminated in violation of FEHA." (Compl. ¶ 50.) "FEHA's policy against age discrimination satisfies each of the four requirements that [the California Supreme Court] has established as essential to support a common law tort claim for wrongful discharge in violation of public policy." Stevenson v. Superior Court, 16 Cal. 4th 880, 897 (1997). The court denies Home Depot's motion for summary judgment on Plaintiff's wrongful termination claim on the basis of age discrimination as Plaintiff's FEHA age discrimination claim survives, but grants summary judgment in Home Depot's favor and against Plaintiff on his wrongful termination claim on any other basis.

## VI. Violation of California Business and Professions Code § 17200

In his complaint, Plaintiff alleges that Home Depot violated California Business and Professions Code sections 17200, et seq., by misclassifying Plaintiff as an exempt employee and "[d]iscriminating against older, more highly compensated workers," such as Plaintiff, in violation of FEHA. (Compl. ¶ 87.) Section 17200 of the California Business and Professions Code prohibits "unlawful, unfair, or fraudulent business" acts or practices. Cal. Bus. & Prof. Code § 17200. Because Plaintiff's age discrimination and

---

[21] In his opposition, Plaintiff argues that Home Depot's progressive disciplinary policy created an implied contract that Home Depot would only terminate Plaintiff for cause. Plaintiff's complaint does not allege that Home Depot's progressive disciplinary policy created an implied contract or that this policy constituted any kind of agreement relating to Plaintiff's at-will status. (See generally Compl.)

misclassification claims survive summary judgment, his unfair competition claim also survives on these bases. See Herr v. Nestle U.S.A., Inc., 109 Cal. App. 4th 779, 790 (2003) ("[A]n employer that practices age discrimination may have an unfair competitive edge [under the UCL] over employers that comply with the FEHA."). Therefore, the court denies summary judgment on this claim.

## VII. Punitive Damages

Plaintiff seeks punitive damages on his wrongful termination, retaliation, and age discrimination claims. (Compl. ¶¶ 52-53, 61-62, 75-76.) Punitive damages are authorized by California Civil Code section 3294 if the plaintiff proves "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a). "With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Cal. Civ. Code § 3294(b). The term "managing agent" is limited "to employees who in fact exercise substantial authority over decisions that ultimately determine corporate policy." White v. Ultramar, Inc., 21 Cal. 4th 563, 576 (1999). This "discretionary authority over . . . corporate policy" refers "to formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership." Roby v. McKesson Corp., 47 Cal. 4th 686, 715 (2009) (citing id. at 577). "It is this sort of broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice." Roby, 47 Cal. 4th at 715.

Home Depot argues that Plaintiff is not entitled to punitive damages because he cannot establish by clear and convincing evidence that any officer, director, or managing agent of Home Depot was involved in any of the events pertinent to this action. In response, Plaintiff argues only that "it is the deliberate targeting of Kull, documenting his employee file with false findings of fault, hostile work environment, and subjecting Kull and Home Depot associates to dangerous working conditions in blatant violation of safety policies, that support punitive damages in this action." (Doc. No. 29 at 31.)

Plaintiff fails to dispute Home Depot's contention that no officer, director, or managing agent of Home Depot was involved. He does not argue or present any evidence indicating that store managers Taylor and Budde or AACG human resources director Lee were officers, directors, or managing agents of Home Depot. <u>See White</u>, 21 Cal. 4th at 575-77. Furthermore, the record does not indicate that any other Home Depot supervisors were aware of the alleged harassment and discrimination of Plaintiff. Therefore, the court grants Home Depot's motion for summary judgment with respect to Plaintiff's claims for punitive damages.

## CONCLUSION

Home Depot's motion for summary judgment is granted in part and denied in part as follows: Denied as to Plaintiff's age discrimination, wage misclassification, and § 17200 claims; granted as to Plaintiff's retaliation claim and request for punitive damages; denied as to Plaintiff's wrongful termination claim on the basis of age discrimination, but granted as to Plaintiff's wrongful termination claim on any other basis; denied as to Plaintiff's harassment claim on the basis of age, but granted as to Plaintiff's harassment claim on any other basis.

IT IS SO ORDERED.

DATED: July 10, 2019

_____
JEFFREY T. MILLER
United States District Judge

18cv933 JM (JLB)